The last case before the court, case number 152061, Motorola Mobility v. Microsoft. Again, a decision from the Patent Trial and Appeal Board. Mr. Emke, do you want five minutes for rebuttal? Yes, ma'am, thank you. Okay. All right, you may begin. Thank you. May it please the court. This claim construction dispute is about when content is to be displayed in a browser. And based on the briefing, I actually think we're down to about two issues, maybe one and a half. The first issue is an issue raised by the board's claim construction about whether all of the content is to be displayed during the content loading. Do you both agree that the board's claim construction, to the extent that it says that you don't get to the fully loaded mode until it's fully loaded. I think you're reading my notes, Your Honor, because that's my exact. So you all agree on that. Yes. So the question is, why does that matter? I mean, does the fact that the board got that portion of the claim construction wrong automatically require that we have to send it back? Well, yes, Your Honor, we actually think that's the first part of it. Yes, the parties are in agreement that when we're looking at the notion of when we're loading and displaying content, it's happening within this mode. And the board's construction is attempting to create this notion of the content is different between the two respective modes. We do think that's an incorrect construction to just leave hanging out there. But I think the second issue, then, is the more apropos issue that was raised by Marksoft in the brief about a very specific manner of displaying the content, of attempting to restrict the claim to an incremental form of loading and displaying the content. And that's where we disagree that the claim scope should not be so limited and so narrow to require, in all instances, an incremental loading and display of the content. And so when you say incremental loading, that means you've got the icon staring at you in the face while you're sitting there watching the page load?  On the display? I believe that's the intended interpretation from Microsoft of that. I'm curious, back in the, I guess, 1996, 1997 timeframe, is that how Internet Explorer and WebScape worked? Netscape, Your Honor. Netscape. I believe it was already known in the field and in the art to be able to facilitate partial rendering of content. Then why didn't you cite other prior art other than just these pinpoint references? The reason we did not, Your Honor, is because of what the claim scope and what the specification described. As we look at the specification and the language that was added about three years into the prosecution, is that we only had this figure three and figure four described within the specification, where there was a display of the content during the loading mode in its entirety. There was no condition at all within the claim whatsoever, or within the specification, that there would be a partial display. I guess I'm having a difficult time. When you say display during loading mode, so you're saying that you're only talking about that final last point, and that during the loading mode doesn't include the entirety of the loading mode? No, we're of the position that you do disclose, or you do display all of the content during the loading mode, yes. Okay, so loading mode starts here. Yes. And pinpoint doesn't display the content until here, correct? Correct. I agree that that's in the loading mode. Microsoft agrees that that's still in the loading mode. So you're saying that all of this, there's no display. You're saying they don't even claim a display? No, what we're saying is that all of this is keying off of the display of the status icon, because that was what the intention of the invention was from the very beginning, was when we're in a particular loading mode, whatever actions we need to be doing, but when we're in a particular loading mode, we're supposed to be displaying an icon. And then to signify to the user that we are done with this particular mode, again, whatever we're supposed to do in that mode, we then subsequently remove the icon, so the user knows we have transitioned. Right, but what else is, in your view, being displayed during the loading mode? The content, whether it's incremental or whether it's a single increment of load and display. Okay, so I guess you're saying the claim covers an embodiment where during the loading mode, the loading icon shows up, is flashing on the screen somehow. Yes. And then the rest of the display during the loading mode could be just looking, were you the user just looking at the pre-existing web page? Correct. Before any attempt at loading something else occurred. Before any, I guess you're confusing me with that last statement. I agree with everything you were saying. Before clicking on some hyperlink that's on that pre-existing web page. Right, so I'm on page one that contains a hyperlink, and I click that. I believe that the claim then says we are now in loading mode. Whether or not we've even received any content to begin with, we're now starting the loading mode process. So we're going to signify to the user that yes, we recognize you clicked the link, and we're going to display an icon on the screen. Right, and then the next thing that changes on the screen could be a disappearing of the pre-existing web page, and then an appearance of a complete version of the new web page. I believe that is one possibility within the scope of this claim when we look at what the specification describes. And then how does that comport with the claim language in the content loading mode? The hypermedia browser loads content, displays such content in the content viewing area as it loads. I mean, I'll just be honest with you. When I read that phrase, that to me very clearly, unambiguously, is communicating that you, the user, during the content loading mode, is watching the page load before your very eyes. Probably words come first, and then the picture comes second, and maybe the picture doesn't come instantly all together. You have to wait for the picture to somehow materialize in a complete form. And I had the same reaction as well. Oh, good. But when we looked at the rest of the specification and what it was disclosing, there was no disclosure of any specific mechanism that mandated that you had to slice content. We're looking at it from the context of, well, we have this entire mass of content, and let's display it partially. And I'm not disputing that that could not be within the scope of this claim. I'm not trying to exclude that, although I do believe it's not disclosed in the specification. What I'm pointing to is... So what you would be saying is that even if that would sound like the common and ordinary meaning of those words, because I have to say I'm with Judge Chen in terms of just reading those words, you're saying that somehow there's some specification disclaimer of that? I think there's no support for such a narrowed construction. Well, that would be an enablement or written description problem. It's not a question of what the construction should be, right? Well, I would think we would only enter the enablement problem if we adopted such a narrow construction. I think there are other avenues to go that would not result in a 112 specification issue. I think what they're saying is that the plain claim language is pretty clear on its face, so what in the specification or anywhere else would make it so the claim language shouldn't be understood just as it's written? Sure. The claim language was actually added three years into the process. It was not part of the original specification. And the case law indicates, and we cited it in our brief, that when we're attempting to construe a claim, we have to construe it in accordance with the embodiments disclosed in the original specification. And when we look at the original specification, we do not see a specialized form and manner that we're restricting the claim to always displaying solely content in chunks in an iterative fashion, and that we're supposed to exclude a scenario where we would have a single load and single display action. That's our position. So you're saying you can't point us to anything in the spec that you think would lead us away from this notion. You're just saying they can't point us to anything in the spec that would lead us to it. Correct. We're saying that, and again, because I don't think those are necessarily mutually exclusive positions, we're not saying that you cannot do incremental display and break a page into content versus images or perhaps render a page partially. I do not believe that's important in the spec, but I'm not trying to specifically exclude it today. What I'm saying is that even if we have the notion of incremental loading, there is nothing in the specification that we should not, cannot, must not construe the claim to exclude an operation where the content is loaded and displayed in a single step. If I have a small piece of content that does not lend itself to being sliced, if I have the letter A as my content and the claim includes the notion of just raw text, if I have the letter A, I'm going to display that in a single load and display step. We think that is within the scope of the claim when we're talking about display such content as it loads during the content loading. I want you to make sure as we continue to address this. We think that at the end of the day, this is comporting with, again, the intended purpose of the specification because it's all about we're displaying the icon. We're waiting until we're done with the load and display action and then removing. The whole point here is we want to conclude our load and display step before we signify to the user that we're transitioning. We're alerting the user. We're in this process. You've clicked the link. We're doing some loading. Maybe it's happening incrementally. Maybe it happens fast and it's just a single load and display. But when we're done, we're going to remove the icon and move over to the content loading mode. Okay. You're in your rebuttal. Okay. Thank you. May it please the Court, I'd like to address the Court's attention to the prior art reference, Appendix 451 and 452. Regardless of the claim construction, even under Motorola's claim construction, we still should win because the prior art pinpoint busy clock in page 451 has a depiction of figure 45. And there's two things it doesn't show that are required by the claim. So what figure 45 shows is simply the busy clock. Somebody has clicked on a link and the computer is too busy doing other things in order to respond to the user's click. What this does not disclose is displaying content as it loads. There is no depiction in any of the pages that Google submitted, Motorola submitted to the Patent Office, of any content being displayed. None of the external content that is being requested is ever shown here as being displayed. So it doesn't disclose displaying the content while it's loading. The second thing it doesn't disclose... Do you believe it doesn't disclose displaying the content while loading in a fully loaded mode? In other words, what you've now said with respect to your claim is that you display it incrementally and you also display it in a fully loaded mode during the loading process, right? Not necessarily, if I understand correctly, Your Honor. Our position is that you do disclose, during the loading process, you disclose the content as you go along. And therefore, at the end of that process, yes, all of the content is... At some point it's fully loaded. Right, at the end it's fully loaded. That's correct. And you're still in the loading mode. You can see that. That's correct, and the graphic could still be there at that point. That is correct. Is it your position that PennPoint... I meant to write this down as a question, but I don't know what an ungulate is, but that's a different question. See figure 45. Sorry. Ah, very good. A herd of ungulates, but beyond that... A large number of ungulates. Is it your position that never, during the loading mode, even at that fully loaded point, does PennPoint display? That's right. That is our position. And in particular, the second thing it doesn't disclose is it never discloses the busy clock and the content simultaneously. So it doesn't disclose... PennPoint doesn't disclose displaying content as it's loading, nor during the process of loading, while loading, during that, say it takes 10 seconds to load everything, it doesn't disclose displaying the content during the 10 seconds. We will confess, assume that eventually the content shows up, but not during the 10 seconds that it took to load. No disclosure of that. Nor is there any disclosure that the busy clock appears when the content appears. So as far as this disclosure is concerned, and in fact this is the only rational reading of the busy clock, the busy clock has disappeared long before that 10 seconds. The purpose of the busy clock is to say to the user that we know our display looks frozen, but that's because the computer is doing something else. The hand-hand is doing something else. So in the 10 second example, the busy clock disappears before the first display. Now this is slightly different than the way I thought I understood your argument from your briefs. So are you saying that your claims don't necessarily require incremental loading? So in other words, they don't necessarily require a showing of content during the entirety of the loading period? No, I'm not saying that. I'm saying if the loading takes 10 seconds, then it's displayed as it loads. We stand by the plain meaning. So for the whole 10 seconds? The whole 10 seconds. If somehow it took only a nanosecond, then boom. It's just going to show up. But during the period as it loads, you need to do three things simultaneously in our claim. You need to be loading the content, the new content. You need to be displaying it as it loads. Now it doesn't mean that it may load, there may be a slight lag, but as a practical matter, the user sees the content as it loads, and you see the temporary graphic. Then what happens? The graphic disappears, and that tells the user, okay, it's all loaded, and the display is not going to change anymore. What's your response to your adversary's argument that the idea of displaying content as it loads is not disclosed in your specification? Figure 3 is described. We disagree, Your Honor, with my friend. If one turns to column 4 at line 54, this is a description of figure 3. Figure 3 is referenced at column 4, line 15, and then the next paragraphs here, including line 54, 53, 54, are referring to figure 3. It says, beginning at line 53, column 4, rather, the browser is configured to display a temporary graphic element, 64, over a content viewing area during times when the browser is loading content. So it is referring to figure 3 as a time at which the browser is loading content. And then if we look at figure 3, it is displaying content. In fact, it's displaying, it appears from the static image, it's displaying all the content. But what the spec describes, the written description describes, is that figure 3 is a period when the browser is loading content and the figure 3 shows content. So it shows, you have to look at the text and the figure together to see a disclosure that during this period of loading content, indeed the browser is displaying content. We also would submit that the argument is a written description argument. The plain meaning has now been admitted to as means when or during. That's how the examiner understood it. The examiner said that we have in the appendix at page A5012, we have Motorola quoting the examiner, equating as it loads, quote, means that content is displayed while it is loading and PenPoint does not teach this partial display of loaded content. So again, A5012. So that's how the examiner understood it. Motorola admitted it. And then I think there might have been a comment that the board got the construction wrong. We disagree with that. The board simply said the very logical point that just, and I'll go back to, I'll end with a theatrical analogy if I could, the curtain idea. So we have in our brief the notion that if, there's two ways of doing things. You could have the curtain up so that the audience sees the scenery when it's being loaded on the stage by the stagehands. That's one way of doing it. And obviously when you do that, at the end of their work, you see all of the loaded scenery. That's the way the claim is talking about. What PenPoint does is very different. At PenPoint, the curtain is down as far as the disclosure is concerned. The scenery is loaded behind the scenes. Nobody sees it. And then the curtain goes up and it's all there. Those are completely different ways of doing things, and that's all the board was saying. And refer to page A8. This is the board's decision. At the bottom, this is the last paragraph on A8, and two sentences from the bottom. So it basically says, the board, quote, so even assuming without deciding that the busy clock is displayed when all the loaded content is displayed, as requester seems to suggest, this content is not displayed as it loads, but rather after it loads. So wait, for you to say that the board specifically said that there are two separate modes, the content loading and the loaded mode, and it said the content loading mode must not include displaying all loaded content. But you're saying that it can't. I'm saying I don't read the board's ruling the way Your Honor is suggesting. I say the board read it the way we urged it and the way we're urging it now and in our brief. The board is saying that merely displaying everything after it's loaded, that that's not the same as doing it during it. Waiting 10 seconds to display it is not the same as doing it during the 10 seconds. So again... Well, that's fine for purposes of the distinction between PenPoint and your claims to the extent that that's what the board was talking about. But this language that I'm talking about, where they talked about the two temporal aspects of the modes, that was in their claim construction. Well, but they say include displaying all loaded. They're correct. There are two temporal aspects. The two temporal aspects, albeit they overlap at an instant when the content loading has completed. The board didn't say anything to the contrary. In fact, the sentence I read, they seem to acknowledge this. They say even if it's displayed when all the loaded content is displayed, which is fine. We agree with that. That doesn't mean you were doing it during the 10 seconds. That's all they're saying. Now they have language that in isolation is confusing. They say to construe the content loading mode to include displaying all loaded content, i.e. after it loads completely. What they meant was that isn't good enough. You can't construe this content loading period as being satisfied if all you do is raise the curtain at the end. They weren't saying that you... The proposed construction to me is bizarre that Motorola suggested that what the board was saying was, oh yeah, you disclose it all along for like 9 seconds and then you stop disclosing it. That's silly. The board didn't say that. No one proposed that. That isn't what they were saying, and there's nothing in the record that would support that notion. That would be bizarre. There's nothing in the patent that says that. What about your figure 3, which represents the content loading mode and appears to show a fully loaded web page with the loading icon still flashing on the screen? Right, and the written description describes that as a period when content is loading. That's what the written description says the content is... But you understand when I compare figure 3 to figure 4, which is the content loaded mode? Yes. The two web pages look identical. We've agreed to that, yes. So I guess what I'm wondering is, it looks to me, just looking at the figures, that the content loading mode shows a web page that is fully loaded. Well, the written description says it's not. The written description, again, says... But when you look at the figures, we all agree that they're showing the identical web page. We agree that it appears to be the identical web page. However, as we noted and the board noted, and I'm not sure the examiner did, it could very well be that the resolution isn't fully there. That the Windows graphic could be a higher resolution. There could be more content loading. The practical matter is that the drafter didn't bother to do a very good job with the drawing, but perhaps wasn't too worried about that because he had or she had the specs saying during times when the browser is loading content. So we're at a point now with your claim that the only arguable patentable advance over the prior art is that the viewer, the user, gets to watch the new page loading while the little icon is on the screen. Is that fair to say? No, Your Honor, we wouldn't think that's fair to say as to the prior art of record. Their challenge was a single reference. In fact, they'll take four pages from PenPoint. It doesn't show anything that's required in this content loading. It doesn't show the graphic appearing during display of content. Well, that's my point. They're showing some kind of graphic, but they're not showing the graphic while you, the user, get to watch the new page slowly building on the screen. That's correct, but that's not complete. Also, you don't get to see the graphic when you see any of the content, even the full content. You don't get to see a little of the content in the graphic. You don't see the content with the full. You don't get to see figure three. You don't get to see figure four. Were you the first ones to come up with that idea back in 1997? It seems like that was already an established practice in the arts. Well, I would only say I would think that Motorola, Google, if there was better art, they could have found it. They're well-equipped, and this is what they came up with. I guess what I'm saying is I'm a little concerned for Microsoft with this patent in terms of its ultimate validity. Well, I can't speak to that, obviously. The claim as a whole, other limitations, the spec described the admitted art as having certain of these elements, but the difference was back then with a slow-loading small handheld that you had this graphic, and it didn't take up space. The claim specifies that it's obstructing some content. It's only temporary. It's not taking up space on the toolbar, and certainly it is true with small screens. Things like that matter a lot in terms of whether you have some permanent graphic that's obscuring toolbar or taskbar. So I can't personally say that it's not a good thing. You thought things were going pretty well until they dropped that bomb on you, right? Well, I can't personally say that it's a bad invention. I can say. I noticed that Column 2 talks about using the patent. It talks about to avoid this situation, browsers typically include a flag or globe that becomes animated during periods when content is being loaded. Is that like an admission in the background of the invention, admission about what the prior art teaches? There is prior art description in the background. It could be an admission, but the challenge here did not, the 103 challenge did not combine admitted art and PenPoint. The 103 challenge that the examiner had to deal with, the board had to deal with, was simply on PenPoint. No background art, no expert, no secondary considerations, no admitted art, and we would submit it would be unfair to the examiner and the board to change the challenge at this level. And in response to Judge Romali's question, I would just note that ungulate is a hoofed mammal. Thank you. Thank you. Okay. You have four minutes and 40 seconds for your rebuttal. I just want to address just a few quick points. In response to your questions about figure three, counsel referenced some portions of the specification in column four. Actually, throughout their response brief, they attempt to address the notion that their specification does not disclose the specific embodiment of displaying content incrementally. When we look at the citation referenced here, there's not even the notion of displaying the content. We're displaying a temporary graphic when the browser is loading content. There's no disclosure of displaying content incrementally here. That's a separate question, right? Again, yes, I agree. I think all this is going back to as we're trying to reconcile this language within the claim with what's actually disclosed in the specification. I want to first touch on that. Where in PenPoint does it show any display of any content? What PenPoint? Before the curtain comes up. Sure. When we look at PenPoint, what PenPoint is referring to is you have a busy clock, and you put the busy clock up on the screen and referring to A51, A762. It's all about this program environment where it can display documents, it can display text, it can display images, and it teaches that throughout this process for all applications, that when it's doing something, including loading remote files, to signify to the user, I'm doing something, whatever your action happens to be, whether it's retrieving the content or following a hyperlink, put the clock up on the screen. And as you keep it up on the screen, as it says on A762, you keep it up on the screen until your application is no longer busy, and then you send a message to the manager with a busy off signal to remove the icon from the screen. So it's teaching, again, and it appears like this is almost being crafted as an anticipation argument. That was not the argument and the grounds that we cited. This is actually multiple pinpoint references that we did in the obviousness combination. This is not an anticipation argument. And so what we have here is we have a system describing that you can display documents on the screen, that you can click on hyperlinks, and that you display a clock when the application is busy doing whatever the application happens to be doing. And then when it's done with this process, you remove the clock. We believe that renders obvious loading and displaying content when you're displaying the busy clock because that's what your application is busy doing. I'd also point out that in the initial re-examination, claims 40 through 42 were actually initially found obvious over the pinpoint references. It wasn't until this claim construction was adopted that it was deemed that the pinpoint references fell outside the scope of the claim. Okay. Anything else? That's it. All right. The cases will be submitted. Thank you, Your Honor. This court is adjourned. All rise. The Honorable Court is adjourned from day to day. Thank you.